IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kasey A. Bernola,                     Case No. 3:14CV1405

        Plaintiff,

        v.                                  **ORDER**

Commissioner of Social Security,

        Defendant.

This is a Social Security case in which plaintiff, Kasey A. Bernola, appeals from the Commissioner's decision denying her application for Social Security Disability (SSD) and Supplemental Security Income (SSI) benefits under Title II and XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

Bernola objects to the Magistrate Judge's Report and Recommendation (R&R) (Doc. 19) and asks I overrule the R&R and reverse the Commissioner's decision. (Doc. 20).

I have jurisdiction under 42 U.S.C. § 405(g).

For the following reasons, I adopt in full the R&R, and I affirm the decision of the administrative law judge (ALJ).

1

**Background**

Numerous decisions have laid out the facts supporting Bernola's application to the Social Security Administration (SSA), so I only briefly summarize the information here.

Bernola applied for SSD and SSI benefits on January 3, 2011.[1] (Doc. 13 at 226, 228). She claimed she had been unable to work since August 2008 due to numerous disabling conditions: "left knee; schizophrenia w/ psychotic episodes; PTSD; panic attacks; anxiety; [bipolar disorder] with both manic depressive and manic episodes; [and] lower back pain."[2] (*Id.* at 226, 228, 258).

Upon receiving her application, the SSA notified her she did not have sufficient work history to be eligible for SSD benefits. (Doc. 13 at 119). Bernola did not appeal that determination, nor does she challenge it here. (*Id.*; Doc. 14 at 2).

Later, the SSA denied Bernola's SSI application, both initially and upon reconsideration. (Doc. 13 at 123-25, 133-35). On March 30, 2012, Bernola filed a written request for a hearing before an ALJ. (*Id.* at 140-41).

An ALJ heard Bernola's case on November 2, 2012. (*Id.* at 37-64).

To determine whether Bernola had a disability, the ALJ undertook the five-step sequential analysis set forth in 20 C.F.R. § 1520(a)(i-v). (Doc. 13 at 14-25). The Sixth Circuit described the analysis in *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004):

> First, the claimant must demonstrate that [she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [she] suffers from a severe medically

---

[1] Bernola had unsuccessfully applied for benefits once before, in 2008. (Doc. 13 at 66-81).

[2] Bernola received treatment for her mental health issues before and after she filed her application. (Doc. 14 at 3-5). As detailed in the R&R, the severity of her condition fluctuated as her treating physician adjusted her medications to find the most effective combination with the fewest side effects. (Doc. 19 at 6-8).

> determinable physical or mental impairment. Third, if the claimant shows that [her] impairment meets or medically equals one of the impairments listed in [the applicable regulation], he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functioning capacity, as well as [her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.

*Id.* (citations omitted).

To evaluate Bernola's residual functional capacity, the ALJ looked to two reports (RFCs) her treating physician provided in October 2010 and October 2012. In the 2010 RFC, the physician assessed Bernola to be "markedly limited" in twelve of twenty RFC categories,[3] and "moderately limited" in the remaining eight. (Doc. 13 at 461). She opined Bernola was "unemployable," and she expected Bernola's limitations to persist twelve months or more. (*Id.*).

In the 2012 RFC, the physician diagnosed Bernola with Bipolar II Disorder; PTSD; Personality Disorder, not otherwise specified; and Psychosis, not otherwise specified. (*Id.* at 517). She described Bernola's prognosis as "guarded." (*Id.*). The physician determined, based on Bernola's physical and mental limitations, taken in combination, Bernola would be unable to perform a job – i.e., would be "off-task" – only five percent or less of an eight-hour workday. (*Id.* at 517). Later in the report, however, the physician concluded Bernola would be unable to obtain and retain full-time work in a competitive work setting. (*Id.* at 518).

---

[3] RFC categories include, *inter alia*, ability to carry out detailed instructions, ability to perform activities within a schedule, ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, etc. *See, e.g.*, *Martin v. Comm'r of Soc. Sec. Admin.*, 2013 WL 1947176, *6 (N.D. Ohio).

The ALJ found while Bernola had several severe physical and mental impairments, she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the applicable regulation]." (Doc. 13 at 20-21, 23, 29-31).

Further, Bernola had "residual functional capacity to perform light work as defined in the [applicable regulation]." (*Id.*). "Considering [Bernola's] age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that [she] can perform." (*Id.*) Thus, Bernola "has not been under a disability, as defined in the SSA, since . . . the date the application was filed." (*Id.*).

The SSA Appeals Council denied Bernola's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3).

Bernola now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). She raises two legal issues: 1) "Did the ALJ produce reversible error by refusing to grant the greatest weight to the sole longitudinal health source of record?"; and 2) "[w]as the ALJ's evaluation of the treating mental health source procedurally deficient so as to leave that determination not supported by the weight of substantial evidence?" (Doc. 14 at 2).

## Standard of Review

When reviewing a Magistrate Judge's R&R, I make a de novo determination regarding the portions to which plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's decision, I must determine whether substantial evidence supports the ALJ's findings, and whether the ALJ applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

I may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If substantial evidence supports it, I must affirm the ALJ's decision, even if I would have decided the matter differently. *See* 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, *supra*, 889 F.2d at 681 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether substantial evidence supports the ALJ's findings, I view the record as a whole, *see Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and consider anything in the record suggesting otherwise. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978).

**Discussion**

Bernola objects the Magistrate Judge's R&R is flawed because it fails to conclude: 1) the ALJ's decision violated the "treating physician" rule; and (2) a "procedural error" by the ALJ created a false picture of Bernola's capabilities. (Doc. 20 at 2, 4).

**A. The "Treating Physician" Rule**

An ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to those of non-treating physicians. *Gayheart v. Comm'r*, 710 F.3d 365, 375 (6th Cir. 2013).

The so-called "treating physician" rule requires an ALJ to give a treating physician's opinion controlling weight where it is: 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and 2) "not inconsistent with the other substantial evidence in

5

the case record." *Id.* at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *see Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). In other words, an ALJ gives a treating physician's opinion deference only when supported by objective medical evidence. *Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942, *3 (6th Cir.).

Even when a treating physician's opinion is not entitled to controlling weight, an ALJ still must determine how much weight to assign the opinion by applying specific factors set forth in the applicable regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

An ALJ must give "good reasons" for discounting a treating physician's opinion. *Blakley*, 581 F.3d at 405; *Vance*, 2008 WL 162942, *3. Those "good reasons" must have support in the record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakly*, 581 F.3d at 406-07.

Remand may be appropriate when an ALJ fails to provide adequate reasons explaining the weight assigned to the treating physician's opinion, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 2011 WL 63602, *8 (6th Cir.).

Bernola contends the ALJ did not properly weigh evidence in her treating physician's records, which reflect Bernola's longitudinal medical history. (Doc. 20 at 2). Specifically, "[t]he ALJ did not reasonably account for the waxing and waning of symptoms, despite clear documentation of [Bernola's] roller coaster of functionality." (*Id.*).

Instead, Bernola complains, the ALJ improperly focused on short periods during which Bernola was stable enough to work due to large doses of medication that caused "unlivable" side

effects. (*Id.* at 3). Bernola asserts when her dosages were low enough to avoid unpleasant side effects, the "worst of her symptomatology" returned. (*Id.*). Thus, she claims, when viewed in its entirety, her treatment history indicates she was unfit for full-time work. (*Id.* at 2).

The Commissioner responds the ALJ reasonably assessed the medical and functional evidence relating to Bernola's impairments and accounted for them in her analysis. (*Id.*). The Commissioner argues:

> While the ALJ discounted some of [the treating physician's] opined limitations, she provided good reasons for doing so by explaining that they were inconsistent with test results and Bernola's daily activities; appeared to be based on sympathy rather than objective evidence; partially concerned issues reserved to the Commissioner; were internally inconsistent with [the physician's] own treatment notes; and were provided in a confusing form.

(Doc. 17 at 11 (citing Doc. 13 at 27-29)).

The Commissioner contends Bernola's argument rests principally on her subjective disagreement with the ALJ's weighing of the divergent medical evidence, which is not a proper basis for reversal where the ALJ provides "good reasons" for discounting certain evidence. (*Id.*). I agree. *See Mullins v. Secretary of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 2007) (argument over weight given medical opinions not basis for setting aside ALJ factual findings).

Contrary to Bernola's assertion, the ALJ did, in fact, consider Bernola's longitudinal treatment record. The ALJ reviewed evidence of several medical exams and appointments from January 2010 through at least August 2012,[4] a longer period than Bernola references in her own briefs. (Doc. 19 at 20-21).

---

[4] Bernola's paradoxical argument her longitudinal medical history should include only those medical records created after her application is misguided. She cannot cherry-pick what parts of her medical history the ALJ should consider. *See* 20 C.F.R. §§ 404.1520b (SSA may consider *all* evidence relevant to a claim, including all existing medical records), 404.1512(a)-(c) (claimant must submit "all evidence known" related to claimed disability, including medical history).

There is substantial evidence in the record supporting the ALJ's conclusion Bernola's condition had stabilized. (Doc. 13 at 29). Although her treating physician noted a need to fine-tune the dosages of certain medications, the physician also noted Bernola: 1) seemed to be improving (*id.* at 493, 513); 2) was having fewer hallucinations (*id.* at 491-92, 513); and 3) was tolerating her medications well (*id.* at 491).

Indeed, in the 2012 RFC, Bernola's treating physician stated she would be "off-task" no more than five percent of the workday, which the ALJ found to be consistent with other substantial evidence in the record. (Doc. 13 at 29, 517 § 5). The ALJ therefore afforded that statement "great weight." (Doc. 13 at 29).

Bernola argues the ALJ and R&R gave that statement too much weight. (Doc. 14 at 12-13 (citing Doc. 13 at 29)). She points to statements later in the RFC where the physician opines Bernola could not hold down a full-time job. (Doc. 20 at 3). However, the ALJ found those later statements to be "inconsistent with her prior notation of being off tasks only five percent," and also inconsistent with the physician's own treatment notes. (Doc. 13 at 29, 518 § 15).

Accordingly, I find "good reasons," *see Blakley*, 581 F.3d at 405, and substantial evidence, *see* 42 U.S.C. § 405(g), support the ALJ's weighing of the treating physician's opinion. Bernola's first objection to the R&R is therefore unavailing.

### B. Procedural Error

Bernola's other objection is the ALJ's weighing of her treating physician's opinion violated Social Security Rulings (SSR) 96-2p and 96-6p, and 20 C.F.R. § 416.927. (Doc. 14 at 16-22; Doc. 20 at 4-6). Bernola argues these "procedural errors" disregarded opinions in her RFCs without supporting substantial evidence. (Doc. 14 at 16; Doc. 20 at 4-6).

The language of § 416.927(c) (weight of medical opinions) is identical to that of § 404.1527(c) (same), which the Sixth Circuit cites as the basis for the "treating physician" rule. *See Gayheart*, 710 F.3d at 376; *supra* Part A. Likewise, the relevant portions of SSR 96-2p state the same legal standard for weighing medical opinions as set forth in §§ 416.927(c) and 404.1527(c). Thus, to the extent Bernola's second objection relies on § 416.927 and SSR 96-2p, it fails for the same reasons her first objection fails.

SSR 96-6p requires an ALJ to consider opinions of state-agency medical experts when considering disability claims. Such medical opinions are not binding on the ALJ, but the ALJ "may not ignore [them] and must explain the weight given to the opinions in their decisions." *Edwards ex. rel. L.T. v. Colvin*, 2013 WL 3934228, *4 (N.D. Ill.) (internal quotation marks omitted). SSR 96-6p explicitly provides: "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."

Bernola contends non-examining sources "should only properly outweigh a treating source opinion if they had a more complete record at their disposal in forming their opinions." (Doc. 14 at 17). She argues, for various reasons, the ALJ gave these sources too much weight. (Doc. 14 at 16-22). I do not agree.

As part of a "careful consideration of the entire record," the ALJ evaluated the medical opinions at issue using the relevant factors set forth 20 C.F.R. § 416.927(a)-(d). (Doc 13 at 23). The ALJ "afforded [the opinions] *some* weight because they had the benefit of Ms. Bernola's longitudinal record and because [the] opinions are generally consistent with the record as a whole and her routine and conservative treatment." (*Id.* at 28 (emphasis added)). Bernola cannot

9

reasonably argue "some weight" outweighs the "great weight" the ALJ afforded portions of the 2012 RFC.

Again, as with her first objection to the R&R, Bernola's arguments largely amounts to subjective disagreement with the ALJ's weighing of medical-opinion evidence. That is not a proper basis for reversal. *See Mullins* 836 F.2d at 984.

## Conclusion

In sum, the ALJ is responsible for reviewing all the evidence, including all medical evidence, in making her determination. 20 C.F.R. § 416.927(c)-(e). The ALJ will consider any statements from medical sources, whether or not based on formal medical evaluations. 20 C.F.R. § 416.945(a)(3). Although the ALJ considers all evidence before her, the ALJ makes the final finding as to Bernola's residual functional capacity. 20 C.F.R. § 416.946(c).

I find substantial evidence supports the ALJ's findings of fact, and the ALJ applied the law correctly to those facts. *Brainard* 889 F.2d at 681. I therefore must affirm. 42 U.S.C. § 405(g); *Kinsella*, 708 F.2d at 1059; *see also Mullen v. Bowen*, 800 F.2d at 545.

For the foregoing reasons, it is hereby:

ORDERED THAT

1. Bernola's objections to the Magistrate Judge's Report and Recommendation (Doc. 20) be, and the same hereby are, overruled; and

2. The Report and Recommendation (Doc. 19) be, and the same hereby is, adopted as the order of this court.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge